UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GREGORY LEWIS BELVIN,

Plaintiff,

v.

NANCY A. BERRYHILL,

Defendant.

Case No. 4:18-cv-02637-KAW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 14, 20

Plaintiff Gregory Lewis Belvin seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for an immediate award of benefits. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment.

## I.    BACKGROUND

On May 22, 2014, Plaintiff Gregory Belvin filed a Title XVI application for Supplemental Security Income ("SSI") Benefits. Administrative Record ("AR") 25, 200. Plaintiff alleges a disability onset date of February 1, 2014. AR 25. Plaintiff's claim was initially denied on August 11, 2014, and upon reconsideration on December 18, 2014. AR 101, 108. Plaintiff filed a Request for Hearing on February 18, 2015. AR 115-17. A hearing was held before Administrative Law Judge Richard P. Laverdure on December 7, 2016. AR 25-36.

Plaintiff is 25 years old. AR 35. He was born and largely raised in Oakland. AR 673. Plaintiff's parents are divorced, and he witnessed domestic violence in the household prior to their separation. AR 673, 693. Although Plaintiff denied being abused himself, records from West

Coast Children's Clinic indicate that he was placed in protective custody by police in 2010 due to an altercation with his mother and allegations that he was being abused. AR 835, 843.

Plaintiff has a family history of mental illness and substance abuse. AR 428, 474. Plaintiff first attempted suicide at age 12 by ingesting a bottle of Advil. AR 430, 469, 688. As a teenager, he exhibited difficulties with affect regulation, problems controlling his anger, problematic social behavior, impulsivity, irritability, and poor insight and judgment. AR 835, 842. Despite poor academic performance in high school, Plaintiff excelled in debate and obtained a partial debate scholarship to University of Western Georgia. AR 428, 468, 673, 852.

Plaintiff suffered a psychotic break during his first semester of college. AR 428-30, 468. He told college counselors that he was suffering from chronic insomnia and anxiety, feared that his room was being broken into, and felt like he was being watched, like in *The Hunger Games* or *The Truman Show*. AR 428. Counselors noted he exhibited blocking, loose associations, pressured speech, agitated affect, and was not adapting socially. AR 428-30. Campus police also got involved after Plaintiff wrote a conspiracy-laden paper containing "terrorist-type language." AR 468. After failing all but one of his classes, Plaintiff returned to the Bay Area where his father reported that he was a "totally different person" who neglected his hygiene, got a tattoo in the middle of his forehead, always seemed to be in a "daze," and was unable to focus or function. AR 691.

The subsequent years involved numerous emergency psychiatric hospitalizations, including: March 2013 at Alta Bates Hospital for acute psychosis with delusions (AR 457-477); inpatient treatment July 26-29, 2013 at Kaiser and John George Psychiatric Hospital for psychosis and ongoing suicidal ideation (AR 652-655; 685); inpatient treatment September 9-13, 2013 at Alta Bates for auditory hallucinations telling him to hurt himself (AR 480-491); an admission in April 2014 at Alta Bates for severe delusions with doctors determining that he posed a threat to others if placed at a lower level of care (AR 516); inpatient hospitalization May 1-9, 2014 at John George for an intentional overdose on the psychiatric medications Zyprexa and Ativan due to hopelessness and racing thoughts (AR 614-625); two admissions at John George in December 2015 for hallucinations telling him to hurt himself (AR 868-919); a 5150 at Alta Bates Summit

April 14-19, 2016 for acute psychosis and paranoia (AR 732-755); and another admission less than a month later for ongoing psychosis (AR 768-775). During most of these hospitalizations, doctors noted that Plaintiff had not been compliant with his psychiatric medications, which have included Zyprexa, Risperdal, Ativan, and Depakote. AR 480, 491, 501, 615. Toxicology reports during these hospitalizations also noted the presence of THC, and sometimes other substances, including cocaine and methamphetamine. AR 458-59, 482, 521, 615, 739, 893.

Doctors primarily diagnosed Plaintiff with Schizoaffective Disorder, although he has also been diagnosed with other schizophrenia-spectrum disorders, including undifferentiated schizophrenia and Psychosis NOS. AR 475, 491, 513, 515, 574, 614, 679, 696, 714, 720, 746, 826, 856, 862, 1042. In addition, doctors have diagnosed him with polysubstance disorders, including cannabis abuse, cannabis dependence, and amphetamine-type substance disorder. AR 491, 513, 515, 655, 862, 919. Beyond emergency hospitalization, Plaintiff also sought outpatient treatment at La Cheim Behavioral Health and Lifelong Clinic. AR 558-81. From January 11 to February 10, 2016, he underwent residential psychiatric treatment at Woodroe Place, where he received intensive treatment and medication monitoring. AR 789-832, 861. The next month, he was admitted to Turning Point, a transitional living facility for young adults with mental health issues, where he received triage support from a nurse practitioner, therapist, and residential counselor. AR 1044, 1055. In May 2016, Plaintiff was placed on a regimen of Cogentin, Zyprexa, and a monthly dose of Invega Sustenna, a long-lasting injectable anti-psychotic. AR 863. At the hearing, Plaintiff testified that doctors had recently replaced the monthly injections with a three-month dosage, which he described as a "more intense shot." AR 53.

Plaintiff's earnings history is limited, with his most recent earnings report indicating that the most he had made in any one year was a total of $4327.88 from various temp agencies. AR 220-21, 246-47. Plaintiff testified at the hearing that he had been employed full time for two months as a municipal sewer inspector for "AIMS PIWC" and moonlighted as a warehouse worker for Macy's. AR 48-49. However, the new hire wage information report generated by Social Security on December 28, 2016 only reflected $1441 in third-quarter earnings from Macy's, and did not indicate recent employment with AIMS PIWC. AR 250.

3

In a decision dated January 11, 2017, the ALJ found that Plaintiff was not disabled. AR 25-36. On March 2, 2017, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 197. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on March 6, 2018. AR 1-6. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

On October 10, 2018, Plaintiff filed his motion for summary judgment. (Pl.'s Mot., Dkt. No. 14.). On December 26, 2018, Defendant filed its opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 20.) On February 5, 2019, Plaintiff filed a reply. (Pl.'s Reply, Dkt. No. 23.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tackett*, 180 F.3d at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner

proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, she is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III.     THE ALJ'S DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 22, 2014, the application date. AR 27. At step two, the ALJ found that Plaintiff had the following severe impairments: paranoid schizophrenia, and polysubstance abuse. AR 27. At step three, the ALJ concluded that Plaintiff's impairments, including the substance use disorders, met or medically equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 27. The ALJ found that if Plaintiff stopped the substance use, he would not have an impairment or combination of impairments that met or medically equaled a listing in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 32.

Before considering step four, the ALJ determined that if Plaintiff stopped the substance use, he would have the residual functional capacity to perform a full range of work at all exertional levels, except that he would be limited to simple, repetitive tasks with no public interaction required. AR 33. At step four, the ALJ concluded that Plaintiff had no past relevant work experience. AR 35. At step five, the ALJ found that Plaintiff could perform a significant number

of unskilled work at all exertional levels. AR 36.

Lastly, the ALJ found that the substance use disorder was a contributing factor material to the determination of disability, because Plaintiff would not be disabled if he stopped the substance use. AR 36. Thus, Plaintiff was not disabled pursuant to the Social Security Act. *Id.*

## IV.  DISCUSSION

Plaintiff makes three arguments in his motion for summary judgment: (1) that the ALJ erred in determining that his substance use was material to a finding of disability; (2) that the ALJ erred in evaluating the medical evidence by not giving sufficient weight to the opinions of the examining and treating doctors; and (3) that the ALJ erred in evaluating Plaintiff's credibility.

### A.  Whether Plaintiff's substance use was material

Plaintiff argues that the ALJ erred in finding that his use of drugs was material to the disability determination. (Pl.'s Mot. at 8.)  A claimant is not eligible for disability benefits if alcohol or drug addiction is a "contributing factor material to" the disability determination.  42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535 (describing how the agency assesses materiality of drugs and alcohol); Social Security Ruling, SSR 13-2p.; Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA), 78 FR 11939-01.

Under SSR 13-2p, the ALJ must evaluate the disabled effects of all medically determinable impairments, including substance use disorders, and if they find the claimant disabled, they must then conduct a second sequential evaluation to determine whether they would be disabled if they were not using drugs or alcohol.  78 Fed. Reg. 11941.  If claimant has another medically determinable impairment and that other impairment is disabling by itself while the claimant is dependent upon or abusing drugs or alcohol, Drug Addiction and Alcoholism ("DAA") is not material. *Id.*  If DAA causes or effects the claimant's other medically determinable impairments, but the other impairment is irreversible or could not improve to the point of nondisability, DAA is not material. *Id.*  If the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorders would improve to the point of non-disability in the absence of DAA, DAA is not material to the determination of disability. 78 Fed. Reg. 11944.

Here, the ALJ determined that Plaintiff suffers from severe paranoid schizophrenia and

polysubstance abuse, and that his mental impairments, including the substance use disorders, meet the criteria for Section 12.03 (Schizophrenia spectrum and other psychotic disorders), 12.04 (Depressive, bipolar and related disorders) and 12.09 (Substance–related Disorders) of the impairments in 20 CFR Part 404, Subpart P, Appendix 1, or the "listings." AR 27-32. At the second step, however, the ALJ determined that if Plaintiff stopped his substance use, he would continue to have severe impairments, but those impairments would not render him "disabled" within the meaning of the Social Security Act. AR 32-35. In making these findings, the ALJ largely relied on the testimony of the non-treating, non-examining medical expert, Dr. Strahl, because he was "the only medical source who has had the opportunity to hear reports of claimant's functionality during periods of abstinence and medical compliance." AR 31-32.

Plaintiff argues that the ALJ erred in assigning the most weight to Dr. Strahl's opinion, because Dr. Strahl's testimony "did not demonstrate the separate effects of Plaintiff's treatment for substance abuse and treatment for his co-occurring mental disorders in accounting for Plaintiff's reported functional improvement by the time of the hearing, [due to his reported abstinence,] including new evidence of medication compliance in a structured care setting." (Pl.'s Mot. at 10.) Indeed, under SSR 13-2p, a claimant's

> [i]mprovement in a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use. We may find that DAA is not material depending on the extent to which the treatment for the co-occurring mental disorder improves the claimant's signs and symptoms. If the evidence in the case record does not demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorder(s), we will find that DAA is not material….

78 Fed. Reg. 11945. In opposition, Defendant argues that the period of sobriety is more than sufficient to support a finding of materiality, because Plaintiff was able to hold down a full-time job. (Def.'s Opp'n at 2-3.)

At the time of the hearing, in December 2016, Plaintiff testified that he had been employed full-time for approximately two months as a municipal sewer inspector, and held a part-time warehouse position with Macy's for five months. AR 48, 55. In May 2016, Plaintiff was placed

on a monlty dose of Invega Sustenna, a long-lasting injectable anti-psychotic. AR 863. Shortly before the hearing, Plaintiff testified that his medication was switched from the monthly injection to a three-month injection cycle. AR 53. At the hearing, Dr. Strahl opined that the injection medications obviated Plaintiff's prior compliance problems, wherein Plaintiff would stop taking his medication once he felt better. AR 60. Dr. Strahl believed that Plaintiff's mental condition was "much improved because compliance has improved, and the use of substances is minimized because he gets drug tested…." AR 60. Even so, Dr. Strahl does not solely attribute Plaintiff's apparent ability to function to not using drugs. Rather, Dr. Strahl acknowledged that Plaintiff had at times met "a listing" before he ever used illicit substances. AR 61. Thus, in assigning great weight to Dr. Strahl's opinion, there is no way to separate Plaintiff's schizophrenia from his substance use, which the medical professionals agree was a product of his mental disorder. *See* AR 60-62.

Lastly, Dr. Strahl testified that, while Plaintiff was doing "better" on the injectable medication, he could not say that Plaintiff would not suffer another psychotic break even if he continues with his injections. AR 60. The Court also notes that, at the time of the hearing, Plaintiff was residing in a highly structured treatment setting, which undoubtedly improved the symptoms of his co-occurring mental disorder. *See* 78 Fed. Reg. 11945.

SSR 13-2p requires a finding that DDA is not material "[i]f the evidence in the case record does not demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorder(s)." 78 Fed. Reg. 11945. Here, it is impossible to separate the effects of Plaintiff's medication compliance and his residential placement from his abstinence, which, pursuant to SSR 13-2p, requires a finding of immateriality. As a result, the ALJ erred in finding Plaintiff's drug use material, and the case must be remanded.

**B. Remaining arguments**

In light of the finding that the ALJ erred in concluding that Plaintiff's drug use material, the Court need not address Plaintiff's remaining arguments.

**C. Remand for an award of benefits is appropriate**

While remand is required, it is only proper to remand for an immediate award of benefits if

there are no outstanding issues that must be resolved before a determination of disability can be made. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (citations omitted).

Meeting a "listing" at step three entitles a claimant to benefits. *Reddick*, 157 F.3d 715 at 721. Here, the ALJ found that Plaintiff's impairments, including the substance use disorders, met or medically equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 27. Since the ALJ's only reason for finding that Plaintiff did not meet a listing was due to an erroneous finding that his DDA was material, the Court finds that remand for an award of benefits is proper, since Plaintiff otherwise meets the listings for Section 12.03 (Schizophrenia spectrum and other psychotic disorders), 12.04 (Depressive, bipolar and related disorders) and 12.09 (Substance–related Disorders) in 20 CFR Part 404, Subpart P, Appendix 1, and satisfies the paragraph B duration requirement. AR 27-32.

## V. CONCLUSION

In light of the foregoing, Plaintiff's motion for summary judgment is GRANTED, and this action is REMANDED to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for an immediate award of benefits. Defendant's cross-motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: September 30, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge